UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| David D Lewis, <br><br>                    Plaintiff, <br> v. <br><br> Belinda Stewart, *et al.*, <br><br>                    Defendants. | Case No. 3:20-cv-05248-BHS-TLF <br><br> REPORT AND RECOMMENDATION <br><br> Noted for April 23, 2021 |

This matter is before the Court on defendants' motion for summary judgment (which is interpreted by the Court as a motion for partial summary judgment because it does not address all of plaintiff's claims). Defendants seek summary judgment of plaintiff's First Amendment claims on the ground that defendants had a legitimate penological interest for their denial of plaintiff's request to participate in the Ramadan meal program due to his failure to meet eligibility requirements, and because the lack of specific Nation of Islam religious programming does not place a substantial burden upon plaintiff's ability to practice his religion. Dkt. 24. Defendants also seek summary judgment dismissing Defendants Rothwell, Dahne, Van Ogle, Haynes, Gilbert and Sinclair because plaintiff has not evidence establishing their personal participation in violation of any of his constitutional or statutory rights. *Id*.

Plaintiff has brought suit under 42 U.S.C. § 1983 against defendants for alleged violations of his First, Eighth, and Fourteenth Amendment rights, and for violating his

REPORT AND RECOMMENDATION - 1

rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA). Dkt. 5. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons discussed below, the Court recommends that defendants' motion be granted.

PROCEDURAL HISTORY

Plaintiff, who is incarcerated at Stafford Creek Corrections Center ("SCCC"), filed this action in on March 16, 2020. Dkt. 1. He alleges that defendants, Belinda Stewart (Religious Program Manager), Gary Wakeman (Chaplain), A. Rothwell (a sergeant), Dennis Dahne (Grievance Coordinator), Dan Van Ogle (Associate Superintendent), Ron Haynes (Superintendent), Margaret Gilbert (Superintendent) and Steven Sinclair (Deputy Secretary of the Department of Corrections ("DOC")), violated his rights under the First Amendment and RLUIPA by denying him religious services specific to his Nation of Islam ("NOI") faith and, and violated his rights under RLUIPA, the First Amendment and Eighth Amendment by refusing to allow plaintiff to participate in a Ramadan meal program so that he could observe Ramadan. Dkt. 5, at 6–9. Plaintiff also invokes the Fourteenth Amendment's Equal Protection Clause but does not appear to allege facts in support of that claim. Dkt. 5, at 6. Plaintiff asserts his claims against each defendant in his or her individual and official capacity. Dkt. 5, at 6.

On January 25, 2021, defendants filed their motion for summary judgment, together with a *Rand* notice and the Declarations of Bryan King, Gary Wakeman, Dennis Dahne and Carey Flewelling. Dkts. 24–29. Defendants assert they had a legitimate penological interest for their denial of plaintiff's request to participate in the Ramadan meal program—due to his failure to meet eligibility requirements—and they

REPORT AND RECOMMENDATION - 2

contend a lack of specific NOI religious programming does not place a substantial burden upon plaintiff's ability to practice his religion. Defendants further argue that plaintiff has failed to establish the personal participation of Defendants Sinclair, Haynes, Van Ogle, Gilbert, Dahne and Rothwell in any violation of his constitutional or statutory rights and that all defendants are entitled to qualified immunity.

Plaintiff did not respond to defendants' motion. However, plaintiff's Complaint was signed under penalty of perjury. Dkt. 5, at 11. Thus, to the extent they are based upon personal information and set forth facts that would be admissible in evidence, plaintiff's factual allegations in his Complaint will be considered as evidence. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

The Court notes that defendants' motion does not raise any arguments for dismissal of plaintiff's Eighth Amendment claims, Fourteenth Amendment Equal Protection claims, or RLUIPA claims; those claims are therefore unaffected by the motion and will remain pending against Defendants Stewart and Wakeman.

## FACTS

The underlying, undisputed facts are as follows. SCCC offers a program for meals during Ramadan, the Islamic holy month of fasting, as well as a year-round Halal diet and Islamic religious programming in the form of all-Islamic Jummah or Taliem services. *See* Dkt. 25, at 3–4; Dkt. 26, at 2. In 2017, a sign-up process began for participation in the Ramadan meal program. Dkt. 26, at 2. The sign-up process conditioned participation on completing a form and having either – (1) participated in Islamic religious programming during the preceding six months or (2) having signed up to receive Halal meals. *Id*. There was also an exception process for inmates who could

not meet these requirements, providing for discretionary approval by either a facility chaplain or the statewide Muslim Chaplain. *Id*.

Plaintiff requested to be enrolled in the Ramadan meal program, and Defendant Wakeman determined that plaintiff had neither participated in available Islamic programming during the prior six months nor elected to receive a Halal diet. Dkt. 26, at 1, 2. Defendant Wakeman denied plaintiff's request to participate in the Ramadan meal program. *Id*.

Plaintiff contends he was unable to meet the programming requirement because SCCC did not offer NOI-specific religious services. Dkt. 5, at 7. Defendants acknowledge that SCCC did not have a specific NOI religious service but assert that it had an all-Islamic faith service that accommodated all Islamic religious groups. Dkt. 26, at 2. Defendants also state that inmates have the option, if their faith is not represented through existing programs, of arranging through the Chaplain for outside volunteers to conduct services. *Id*. For security reasons, inmate groups cannot have private programming without such supervision. *Id*.

## DISCUSSION

I. **Legal Standard**

    A.    <u>Summary Judgment Standard</u>

Summary judgment is supported "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.

REPORT AND RECOMMENDATION - 4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Id.,* at 255. Yet the Court is not allowed to weigh evidence or decide credibility. *Anderson v. Liberty Lobby, Inc.*, at 255. If the moving party meets the initial burden, an adverse party may not rest upon the mere allegations or denials of his pleading; his or her response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015).

In response to the motion for summary judgment, the nonmoving party is required to present specific facts, and cannot rely on conclusory allegations. *Hansen v. U.S.,* 7 F.3d 137, 138 (9th Cir. 1993). The court must determine whether the specific facts that are presented by the non-moving party, considered along with undisputed context and background facts, would show that a rational or reasonable jury might return a verdict in the non-moving party's favor based on that evidence. *Emeldi v. University of Oregon,* 698 F.3d 715, 728-29 (9th Cir. 2012). Allegations that are based merely on a party's belief are insufficient to oppose summary judgment, as are unsupported conjecture and conclusory statements. *See Hernandez v. Spacelabs Med.*

*Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *McElyea v. Babbitt*, 833 F.2d 196, 197–98 n.1 (9th Cir. 1987) (per curiam).

B. <u>Section 1983 Standard</u>

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the conduct complained of was committed by a person acting under color of state law, and (b) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

Under Section 1983, an inmate must show that each of the defendants was involved in violating the Constitution; liability of an official will only be found if there is individual culpable action or inaction. *Hines v. Youseff,* 914 F.3d 1218, 1228 (9th Cir. 2019).

## II. First Amendment Claims

A. <u>Religious Programming</u>

Plaintiff "must show the [defendants] burdened the practice of [his] religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997), *overruled in part on other grounds, Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). The First Amendment does not reach the "incidental effects" of otherwise lawful government programs "which may make it more difficult to practice certain religions, but which have no tendency to coerce individuals into acting contrary to their religious beliefs." *Lyng v. Northwest Indian Cemetery Protective Ass'n*,

485 U.S. 439, 450-51 (1988). A First Amendment free exercise violation occurs only where a burden imposes more than an inconvenience on religious exercise. *See Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006).

The lack of NOI-specific programming at SCCC does not meet the standard for a First Amendment free exercise violation. SCCC provides a universal all-Islamic Jummah service; statewide Muslim religious Chaplain Rasheed states that the Jummah service is compatible with plaintiff's NOI faith. Dkt. 27-1, at 2. Plaintiff was also informed that he could work with the Chaplain to arrange for outside volunteers to conduct a specific NOI service. Dkt. 27, at 2; Dkt. 27-1, at 5–6.

Furthermore, other forms of religious expression remain available to plaintiff, including receiving a Halal diet, requesting faith group materials through recognized organizations, participation in an annual religious event, and purchasing or receiving donated religious items. Dkt. 27-1, at 6, 7, 8, 12. Where prisoners have the "ability . . . participate in other religious observances of their faith," their inability to attend a religious service does not violate the First Amendment. *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 352, 107 S. Ct. 2400, 2406, 96 L. Ed. 2d 282 (1987). Also, "a prison administration is not under an affirmative duty to provide each inmate with the spiritual counselor of his choice." *Ward v. Walsh*, 1 F.3d 873, 880 (9th Cir. 1993). The Ninth Circuit has held there is no First Amendment violation when a prison fails to provide separate services for NOI prisoners—when general Muslim services were provided. *Ramsey v. Stewart*, 232 F.3d 896 (9th Cir. 2000).

Because the lack of NOI-specific religious services does not impose a substantial burden on plaintiff's religious practice, plaintiff's First Amendment claim on that ground should be dismissed.

B.  Ramadan Meals

Defendants contend that the Ramadan meal criteria did not impose a substantial burden upon plaintiff's exercise of his religion. And defendants argue in the alternative—even if it were found to impose a substantial burden—there is a reasonable relationship between the legitimate goal of ensuring DOC can effectively plan and run a cost-efficient Ramadan meal program and requiring some modicum of prior religious adherence or sincerity for prisoners to sign up for the Ramadan meal program. *See* Dkt. 24, at 12.

"'[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). And prisoners retain the "'right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion.'" *Id.* (quoting *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987)). Yet, "running a simplified food service, rather than one that gives rise to many administrative difficulties," and "the reduction of administrative and budgetary burdens" are legitimate penological interests. *See Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993); *Shakur v. Schriro*, 514 F.3d 878, 886 (9th Cir. 2008).

This Court applies the four-factor test from *Turner v. Safley* to determine whether a prison regulation is reasonably related to a legitimate penological interest: (1) whether there is a valid, rational connection between the prison regulation and the

REPORT AND RECOMMENDATION - 8

legitimate governmental interest; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) "the existence of obvious, easy alternatives," which "may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." 482 U.S. 78, 89–91 (1987). If the first factor is not satisfied, a court need not reach the remaining three factors. *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005).

Regarding the first factor, it is undisputed that under the 2017 sign-up criteria, to participate in the Ramadan meal program an inmate had to have "participated in Islamic/Muslim programing during the previous six months" or be "currently on the Halal diet[.]" Dkt. 26, at 2. However, facility Chaplains and the statewide Muslim Chaplain retained authority to grant exceptions for individuals who did not meet these requirements. *Id*.

Defendants contend that these criteria advanced the legitimate penological goal of simplifying and permitting accurate planning for the complex and costly process of creating and distributing Ramadan meals, by ensuring that only religious inmates may receive them. Dkt. 25, at 3-5. According to the defendants, the Ramadan meal-planning- process must be accomplished early, as production of Halal meals increases from approximately 100 per day during the rest of the year to 500 or more meals per day during Ramadan, for which food must be purchased from vendors well in advance. *Id*. at 4-5. It is important to limit these meals to individuals to whom they are religiously important, because they cost approximately 60% more than mainline meals. *Id*., at 4.

The Court should find that the sign-up policy at issue had a valid and rational connection to the legitimate penological goals of ensuring accurate planning of Ramadan meals to minimize costs and avoid waste.

Plaintiff does not contest the validity of the relationship between cutting costs and prioritizing Ramadan meals to religious inmates. Instead, plaintiff—who was not receiving Halal meals—argues that he is a member of the Nation of Islam and that SCCC "do[es]n't have our proper service." Dkt. 5, at 7. Plaintiff submits no evidence that his NOI faith prohibited him from attending the all-Islamic services offered at SCCC. In contrast, defendants have submitted uncontested evidence from DOC's statewide Muslim Chaplain Rasheed, who states that while NOI differs in some respects from orthodox Islam, all Islamic faiths require participation in Jummah and the version of the service offered at SCCC "is universal[;] any Muslim . . . can attend." Dkt. 27-1, at 2.

Further, plaintiff does not consider the alternative Ramadan meal program qualification that allows participation by individuals who received Halal meals—regardless whether they had participated in religious services at their institution. *See* Dkt. 26, at 2. Plaintiff does not provide any evidence or argument that his beliefs forbade him from receiving a Halal diet—therefore his argument that the sign-up policy effectively excluded NOI practitioners fails to create a genuine issue of material fact. In short, plaintiff fails to show that the sign-up process for the Ramadan meal program bore no rational relationship to the legitimate government interest of efficient planning and avoidance of excessive costs, and the first *Turner* factor thus weighs in defendants' favor. If the first factor is not satisfied, a court need not reach the remaining three factors. *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005).

If the Court decides to review the remaining factors, summary judgment would still be appropriate. Regarding the second *Turner* factor—alternative avenues that remain open to the inmates to exercise the right—defendants note that plaintiff could have fasted independently and supplemented his evening caloric intake with purchased food from the commissary. Dkt. 24, at 12. Plaintiff submits no evidence that this option was not available to him. Because plaintiff fails to provide evidence that he was, in fact, unable to obtain such food, he fails to create a genuine issue of material fact regarding this factor.

Turning to the third *Turner* factor—the impact of accommodating the asserted right—defendants have submitted evidence that screening out non-religious inmates provides substantial cost savings for the Department of Corrections. Dkt. 25, at 4, 5. Plaintiff provides no facts to refute this evidence.

Finally, regarding the fourth *Turner* factor—the existence of easy and obvious alternatives—the burden is on plaintiff to suggest alternatives that "fully accommodate[ ] the prisoner's rights at *de minimis* cost to valid penological interests." *Turner*, 482 U.S. at 91. Plaintiff suggests no alternative—insisting instead that he should simply be exempt from the religious programming requirement. *See*, *e.g.* Dkt. 5, at 15. However, the Ninth Circuit has held that "[i]t is difficult to think of any alternatives more 'obvious' and 'easy' than" a sign-up process for religious diets. *Resnick v. Adams*, 348 F.3d 763, 770 (9th Cir. 2003). Plaintiff does not meet his burden to show easy alternatives exist.

For the foregoing reasons, this Court recommends that defendants' motion for summary judgment be granted as to plaintiff's First Amendment claims.

### III. Personal Participation

A defendant is not liable under Section 1983 unless the defendant has personally participated in a violation of the plaintiff's constitutional rights. *Hines v. Youseff,* 914 F.3d 1218, 1228 (9th Cir. 2019). Defendants argue that plaintiff has not established the personal participation of Defendants Haynes, Van Ogle, Gilbert, Dahne, Rothwell (the "Grievance Defendants"), or Defendant Sinclair in the alleged violations of any of plaintiff's rights concerning the alleged deprivation of religious meals and religious programming.

A.    <u>Response to Grievances</u>

To establish section 1983 liability for damages, a plaintiff must show the defendants, acting under color of state law, personally participated in the alleged deprivation of federal constitutional or statutory rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). More specifically, the plaintiff must allege the defendants, through their own individual actions, violated those rights. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012).

Plaintiff's only allegation against the Grievance Defendants is that they signed responses to grievances he filed regarding Ramadan meals or NOI programming. Dkt. 5 at 7–8. The Grievance Defendants argue that plaintiff has failed to establish they personally participated in the harm alleged, and therefore they cannot be held liable for that harm.

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Accordingly, it is not unconstitutional merely "to deny a grievance." *Johnson v. Hayden*, 2012 WL 652586, at *3 (D. Or. Feb. 10, 2012) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999));

REPORT AND RECOMMENDATION - 12

*Ramirez, supra* at 860 (claimed loss of liberty interest in processing of inmate's disciplinary appeals "lack[ed] the necessary constitutional foundation"). Such defendants may be held liable only if their actions in reviewing a grievance appeal are otherwise sufficient to support a claim that they were placed on notice as to the existence of a constitutional violation and failed to act to prevent it. *Starr v. Baca,* 652 F.3d 1202, 1205–1208 (9th Cir. 2011). Where an official has no knowledge of a violation, or is unaware of a risk of harm, signing a grievance response alone is insufficient to impose liability. *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014).

  Here, plaintiff's sole allegation against Defendants Gilbert, Rothwell and Van Ogle is that they investigated and/or signed a Level II grievance response that denied plaintiff's request to be exempted from religious programming requirements for participation in the 2017 Ramadan meal program. Dkt. 5 at 7. But those defendants cannot be said to have been on notice of a constitutional violation. Instead, the record demonstrates that they were informed by Chaplain Rasheed that there was no religious barrier to plaintiff's participation in the available all-Islamic religious programming. Dkt. 27-1 at 2. Thus, the Grievance Defendants were aware that plaintiff had available to him multiple avenues to qualify for Ramadan meals—through attendance at all-Islamic services or electing to receive the Halal diet—and was not deprived of a federal constitutional or statutory right to participate in Ramadan.

  Plaintiff's claims with respect to Ramadan meals fail against Defendant Dahne for the same reasons; Dahne merely signed a grievance response based upon information that plaintiff could have qualified for Ramadan meals by participating in available programming but had chosen not to do so. Dkt. 5 at 15. Defendant Dahne also

REPORT AND RECOMMENDATION - 13

signed a grievance response informing plaintiff that he could work with the Chaplain to locate a volunteer to sponsor NOI programming. Dkt. 5 at 8. Plaintiff makes no allegation that Defendant Dahne had any authority to alter either the Ramadan criteria or the policy requiring sponsorship for religious gatherings. He has therefore failed to establish Dahne's participation in a violation of his federal constitutional or statutory rights.

Plaintiff has failed to establish the personal participation of any of the Grievance Defendants in the violation of any of his constitutional or statutory rights; all of his claims against them should therefore be dismissed.

B.   Supervisory Liability

In addition, plaintiff appears to assert that Defendant Sinclair is liable because of his position as supervisor and/or DOC executive. Dkt 5 at 8. However, a Section 1983 action may not be brought against a supervisor on a theory that the supervisor is liable for the acts of his or her subordinates. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). To state a claim against any individual defendant, plaintiff must allege facts showing the individual defendant participated in or directed the alleged violation or knew of the violation and failed to act to prevent it. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Leer v. Murphy,* 844 F.2d 628, 634 (9th Cir. 1988). Further, a Section 1983 suit cannot be based on vicarious liability alone but must allege the defendant's own conduct violated the plaintiff's civil rights. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385–90 (1989).

Plaintiff's sole allegation against Defendant Sinclair is that he "created the new [Ramadan meal] policy." Dkt. 5 at 8. But plaintiff submits no evidence that Defendant Sinclair was informed of the denial of plaintiff's participation in the 2017 Ramadan meal program or had any knowledge of the facts plaintiff contends establish a violation of his federal constitutional or statutory rights. Plaintiff's claims against Defendant Sinclair should be dismissed.

**IV.  Qualified Immunity**

The Court has concluded that plaintiff's First Amendment claims should be dismissed for other reasons; accordingly, the Court need not reach defendants' argument that they are entitled to qualified immunity with respect to plaintiff's First Amendment claims.

Because Defendants have made no argument regarding plaintiff's RLUIPA, Fourteenth Amendment or Eighth Amendment claims, the Court cannot evaluate whether Defendants are entitled to qualified immunity on those claims.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court grant defendants' motion for summary judgment and dismiss with prejudice plaintiff's First Amendment claims for denial or Ramadan meals and religious programming specific to the Nation of Islam faith. Furthermore, all of plaintiff's claims against Defendants against Defendants Sinclair, Haynes, Van Ogle, Gilbert, Dahne and Rothwell should be dismissed with prejudice because there are no facts to show their personal participation in any violation of plaintiff's federal constitutional or statutory rights. Because defendants' motion does not seek dismissal of plaintiff's Eighth

Amendment, RLUIPA, or Fourteenth Amendment claims, those claims will remain pending against the remaining Defendants—Belinda Stewart and Gary Wakeman.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on April 23, 2021 as noted in the caption.

Dated this 6th day of April, 2021.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16